In re BLINDER ROBINSON
& CO., INC., Debtor.

Glen E. KELLER, Jr., Trustee for the
liquidation of the business of Blinder,
Robinson & Co., Inc., Plaintiff,

v.

Meyer BLINDER, et al., Defendants.

Civ. A. Nos. 91–K–1622, 91–K–1921,
91–K–1922 and 91–K–2077.
Bankruptcy No. 90–1170 SBB.
Adv. Nos. 91–1283 RJB, 91–1429 SBB.

United States District Court,
D. Colorado.

Dec. 23, 1991.

Michael E. Katch, Dana M. Arvin, Katch, Wasserman & Jobin, Denver, Colo., Lawrence R. Metsch, Miami, Fla., for Intercontinental Enterprises, Inc.

Wm. A. Bianco, Davis, Graham & Stubbs, Denver, Colo., for debtor.

Theodore H. Focht, Michael E. Don, Stephen P. Harbeck, Sec. Inv. Prot. Corp., Washington, D.C.

Kalmon Glovin, pro se.

John Fogerty Winston, pro se.

Thomas E. Orrell, pro se.

Gregory Z. Gerganoff, pro se.

Glen E. Keller, Jr., Englewood, Colo., trustee for Liquidation of Blinder, Robinson & Co., Inc.

Mark Krudys, SEC, Div. of Enforcement, Washington, D.C.

KANE, Senior District Judge.

These consolidated cases are before me on six matters: (1) the motion for mandatory withdrawal of the reference of all defendants in Adversary Proceeding No. 91–1283 RJB, (2) Lillian Blinder's motion for permissive withdrawal of the reference in Adversary Proceeding No. 91–1283 RJB, (3) Mrs. Blinder's motion for permissive withdrawal of the reference in Adversary Proceeding No. 91–1429 SBB, (4) Redmey Management Company's motion for permissive withdrawal of the reference in Adversary Proceeding No. 91–1429 SBB, (5) Mrs. Blinder's motion to stay Adversary Proceeding No. 91–1283 RJB, and (6) Meyer Blinder's petition for writ of mandamus directing the bankruptcy court to grant a continuance in Adversary Proceeding No. 91–1283 RJB.

In the first motion, I must consider whether withdrawal of the reference in Adversary Proceeding No. 91–1283 RJB is compelled by the need to consider laws affecting interstate commerce. The second through fourth motions raise the identical issue: whether a party who files a claim, in particular a customer claim, in a SIPA liquidation can be denied the right to a jury trial in an adversary proceeding against him. The fifth motion, Mrs. Blinder's request for a stay, is dependent on her success on this issue. The sixth matter, Mr. Blinder's petition for writ of mandamus, argues that a continuance of Adversary Proceeding No. 91–1283 RJB is required to protect his Fifth Amendment right against self-incrimination. For the reasons outlined below, the motions and petition are denied.

### I. *Facts.*

By decree dated August 1, 1990, the customers of Blinder, Robinson & Co., Inc. were found to be in need of protection under the Securities Investor Protection Act (SIPA), 15 U.S.C. §§ 78aaa to 78*lll*, and Blinder, Robinson was placed in liquidation. Under the terms of SIPA, the liquidation proceeding was removed to the bankruptcy court. Glen E. Keller, Jr. (the "Trustee") was appointed trustee of Blinder, Robinson.

On April 9, 1991, the Trustee commenced Adversary Proceeding No. 91–1283 RJB, naming as defendants Meyer and Lillian Blinder, among others (the "Alter Ego action"). The adversary complaint alleged twenty-two claims for relief, generally seeking the recovery of property from the defendants on alter ego, breach of fiduciary duty and fraudulent conveyance theories. On August 14, 1991, the bankruptcy court granted the Trustee's motion to strike the jury demands of two defendants, Mr. Blinder and Intercontinental Enterprises, Inc. On September 19, 1991, the court likewise struck Mrs. Blinder's jury demand, after which she filed the instant motions to withdraw the reference in Civil Action Nos. 91–K–1622 and 91–K–2077.[1]

On June 3, 1991, the Trustee commenced a second adversary proceeding, No. 91–1429 SBB (the "Turnover action"), against Mr. and Mrs. Blinder, Intercontinental Enterprises, Inc. and the Redmey Management Company, a business in which Mr. and Mrs. Blinder are principals. In the complaint, the Trustee requested the bankruptcy court to compel the defendants to turn over property belonging to the Blinder, Robinson estate under 11 U.S.C. § 542(a). On October 30, 1991, the bankruptcy court entered an order denying Mrs. Blinder and the Redmey Management Company's demand for a jury trial and transmitting their related motions to withdraw the reference to the district court. Those motions to withdraw the reference became Civil Action Nos. 91–K–1921 and 91–K–1922. They were consolidated with Civil Action No. 91–K–1622 on November 27, 1991.

On December 9, 1991, Mr. Blinder filed a motion for continuance in the Alter Ego action, requesting a stay of the proceedings until entry of judgment in *United States v. Meyer Blinder, et al.*, No. CR–S–90–038–

LDG(LRL), a criminal action pending in District Court for the District of Nevada. Mr. Blinder argued that the pendency of the Nevada criminal case and the prejudice he would suffer should he be forced to invoke his Fifth Amendment privilege against self-incrimination in the upcoming Alter Ego action justified the continuance. On November 22, 1991, the bankruptcy court denied the motion. Mr. Blinder then filed a petition for writ of mandamus in this consolidated case to compel the bankruptcy court to grant the continuance. Mrs. Blinder joined in the petition, seeking a stay of the adversary proceedings pending this court's determination of her right to a jury trial.

Finally, on December 9, 1991, Mr. and Mrs. Blinder and Intercontinental Enterprises, Inc. filed a motion for mandatory withdrawal of the reference of the Alter Ego action. They assert that the claims alleged in the Second Amended Complaint will require "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *See* 28 U.S.C. § 157(d). The motion was transferred from the bankruptcy court to this court on December 17, 1991.

## II. *Issues.*

### A. *Mandatory Withdrawal of the Reference.*

■ In their combined motion for withdrawal of the reference, the defendants in the Alter Ego action argue that, under 28 U.S.C. § 157(d), the action must be heard in the district court because it will involve consideration of laws affecting interstate commerce. The defendants cite to portions of the Second Amended Complaint recently filed in the Alter Ego action,[2] to the deposition of the Trustee and to comments made

---

1. The motions to withdraw the reference in these two cases are, from all appearances, identical. The two cases were consolidated by order dated November 27, 1991.

2. Paragraph 20 of the Second Amended Complaint alleges:

At all relevant times, Meyer Blinder has operated Blinder Robinson in a negligent or fraudulent manner including, without limitation, engaging in methods of operating the business which have resulted in numerous claims for damages being filed against the company for fraud, violations of state and federal law and violations of NASD rules. In these ways, among others, Meyer Blinder has used the corporate form of Blinder Robinson as a means or instrumentality to defraud the public and hinder or delay the legitimate claims of his creditors.

by the Trustee's counsel in a hearing as evidence that the action will require consideration of laws affecting interstate commerce. These materials indicate that the Trustee intends to introduce evidence of alleged securities violations to show that Mr. Blinder had operated Blinder, Robinson in a negligent or fraudulent manner.

■ While 28 U.S.C. § 157(d) requires the district court to withdraw the automatic reference of bankruptcy matters to the bankruptcy court when a case "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," the legislative history of this provision indicates that it is to be construed narrowly. *See United States v. Lenard (In re Lenard)*, 124 B.R. 101, 102 (D.Colo. 1991). The mandatory withdrawal provision has been held to require "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991). Withdrawal is not required where such laws are not material to resolution of the proceeding. *See In re White Motor Corp.*, 42 B.R. 693, 700 (N.D.Ohio 1984).

A reading of the Second Amended Complaint, as a whole, indicates that the securities fraud issues it references are at best tangential to the claims alleged by the Trustee. The complaint is quite clearly addressed to the intermingling of corporate assets between Blinder, Robinson and its related corporate entities and the benefits the defendants derived from that intermingling. It does not directly allege any securities law violations. The Trustee makes reference to securities fraud actions pending elsewhere simply to show that Mr. Blinder's management of Blinder, Robinson fell below the standards expected for a fiduciary of the corporation, focusing on the fact of their filing and not on the underlying basis of the claims. This is also a fair construction of the Trustee's deposition testimony and of the comments made by counsel for the Trustee in a related hearing on Mr. Blinder's right to assert the Fifth Amendment privilege. It does not appear that a finding of a violation of federal securities laws is necessary to the Trustee's success on any of the claims, or that any significant interpretation of federal securities will be required. Therefore, the motion for mandatory withdrawal of the reference must be denied.

B. *Withdrawal of the Reference to Protect Right to Jury Trial.*

■ Mrs. Blinder, a defendant in both the Alter Ego and Turnover actions, and the Redmey Management Company, a defendant in the Turnover action, also argue that withdrawal of the reference is required because they have the right to a jury trial in the adversary proceedings. This is a relatively straightforward question.

In two recent cases, *Langenkamp v. Culp*, — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court outlined the analysis for determining whether a party has the right to a jury trial in an adversary proceeding in bankruptcy. As the Court in *Langenkamp* explained:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 56, and n. 14, 109 S.Ct., at 2798–2799, and n. 14 (citing *Katchen* [*v. Landy* ], *supra*, 382 U.S. [323], at 336, 86 S.Ct. [467], at 476 [15 L.Ed.2d 391 (1966) ] ). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction. Granfinanciera, supra*, 492 U.S., at 56–60, 109 S.Ct., at 2798–2799. As such, there is no Seventh Amendment right to a jury trial. If a party does *not* submit a

claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial. 492 U.S., at 56, 109 S.Ct., at 2798.

111 S.Ct. at 331.

In this case, whether Mrs. Blinder and the Redmey Management Company have the right to a jury trial depends upon whether they have submitted a claim against the Blinder, Robinson estate. *Id.* It is undisputed that both have done so. On or about February 13, 1991, Mr. and Mrs. Blinder filed a proof of claim on behalf of Redmey Management Company for the sum of $5,453.56. (*See* Trustee's Mot. to Strike Def. Lillian Blinder's Jury Demand and Opp'n to Def. Lillian Blinder's Mot. to Withdraw Reference, Ex. B.) Likewise, Mrs. Blinder executed a customer claim for securities held by Blinder, Robinson on September 4, 1990.[3] (*See* Correction to Mot. to Strike Def. Lillian Blinder's Jury Demand and Opp'n to Def. Lillian Blinder's Mot. to Withdraw the Reference, Ex. A.) Therefore, having both filed claims against the estate which trigger the bankruptcy court's equitable jurisdiction, neither Mrs. Blinder nor Redmey Management Company have the right to a jury trial in the Alter Ego or Turnover actions.

Mrs. Blinder further argues, however, that her filing of a customer claim is not equivalent to the filing of a creditor claim, and that, by so doing, she has not waived her right to a jury trial. In particular, she states,

This Customer Claim was *not* filed with the Bankruptcy Court, nor was it submitted to the Trustee for the purpose of asserting a claim against the Debtor's estate. The form constitutes nothing more than bare notice to the Trustee that the Debtor is in possession of certain securities which are the sole property of Meyer and Lillian Blinder and in which the Debtor has no property interest, equitable or otherwise, which securities the Blinders desire to have returned to them. Consequently, Mrs. Blinder cannot be deemed to have submitted to the equitable jurisdiction of the Bankruptcy Court pursuant to her submission to the Trustee of this form.

(Lillian Blinder's Resp. in Opp'n to Trustee's Mot. to Strike Jury Demand at 4.) Her analysis of the effect of the filing of a customer claim is incorrect.

Under SIPA and the case law construing it, a party who files a customer claim is considered a preferred creditor of the estate. SIPA defines the term "customer" as "any person ... who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of business." 15 U.S.C. § 78*lll*(2). "Customer property" is defined as "cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor ..." *Id.* § 78*lll*(4). The securities identified in Mrs. Blinder's customer claim were held in street name, not customer name, and were therefore customer property.

During the liquidation process, in order to determine a customer's pro rata share of all customer property, the trustee must determine the customer's net equity. *See id.* § 78fff–2(c)(1)(B). This determination requires consideration of "any indebtedness of such customer to the debtor on the filing date," *id.* § 78*lll*(11)(B), which by implication would include indebtedness as a result of a successful preference action by the trustee. Therefore, like other creditors of the estate, a party filing a customer claim subjects himself to the process of allowance and disallowance of claims re-

---

**3.** Mrs. Blinder argues that the Redmey Management Company proof of claim, filed on behalf of "Meyer & Lillian Blinder DBA Redmey Management," cannot be construed as a claim filed by her because it was signed only by Mr. Blinder, and he had no authority to act as her agent. (*See* Motion of Lillian Blinder to With-draw the Reference, Ex. C—Aff. of Lillian Blinder.) I need not reach this issue because, as explained below, the customer claim which Mrs. Blinder personally executed is sufficient to trigger the "process of allowance and disallowance of claims" to which no right to a jury trial attaches.

ferred to in *Langenkamp* and *Granfinanciera.* Finally, to the extent that a customer's net equity is not satisfied out of customer property, SIPA provides that "such customers shall be entitled, to the extent only of their respective unsatisfied net equities, to participate in the general estate as *unsecured creditors." Id.* § 78fff–2(c)(1) (emphasis added).

In light of this statutory language, there is no rational basis to conclude that a party filing a customer claim in a SIPA liquidation is not a creditor who has submitted a claim against the estate. In fact, several courts have expressly held that a customer in a SIPA liquidation is a species of preferred creditor. *See, e.g., Mishkin v. Peat, Marwick, Mitchell & Co.,* 744 F.Supp. 531, 555 (S.D.N.Y.1990) (basic scheme of SIPA is to create preferred class of creditors entitled to securities or cash before other creditors share in estate). Thus, Mrs. Blinder's contention that she did not waive her right to jury trial by filing a customer claim is without merit. The motions to withdraw the reference of the Redmey Management Company, clearly a creditor, and Mrs. Blinder, a preferred creditor, must be denied. Mrs. Blinder's motion for stay pending my ruling on this issue is likewise denied as moot.

## C. *Petition for Writ of Mandamus.*

■ Mr. Blinder has filed a petition for writ of mandamus in this case, challenging the bankruptcy court's denial of his motion for continuance of the Alter Ego action. He argues that trial of the Alter Ego action before his criminal trial in Nevada prejudices his right to exercise his Fifth Amendment privilege against self-incrimination because the bankruptcy court would be entitled to draw adverse factual inferences from his refusal to answer the questions of opposing counsel. Therefore, he contends that a writ of mandamus is appropriate to require the bankruptcy court to issue a continuance.

Mr. Blinder's claim that he will be prejudiced by being forced to invoke his Fifth Amendment privilege in the Alter Ego action is not insubstantial. Courts have for many years recognized the inherent unfairness a defendant faces when he must proceed in a civil action while a parallel criminal action is pending.

The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Civil Procedure 16(b), expose the basis of the defense to the prosecution in advance of the criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.

*SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1376 (D.C.Cir.) (citations and footnote omitted), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). In fact, counsel for Mr. Blinder notes that a continuance was granted in a related California state court action against Mr. Blinder, pending the resolution of the Nevada criminal action because of his intention to assert the privilege in the California case. With respect to the Alter Ego action at issue here, his decision to invoke the privilege may effectively eviscerate any defense he may have to the Trustee's claims. Mr. Blinder's request for a continuance, however, comes to me in the form of a petition for writ of mandamus and not as motion for continuance in the first instance. This limits my ability to grant him relief.

"Mandamus 'is a drastic [remedy], to be invoked only in extraordinary situations,' and will issue only in those exceptional circumstances where the lower court has acted wholly without jurisdiction or has so clearly abused its discretion so as to constitute a judicial usurpation of power." *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 911 F.2d 380, 387 (10th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34–35, 101 S.Ct. 188, 189–90, 66 L.Ed.2d 193 (1980)). The party desiring issuance of the writ has the burden of showing a clear and indisputable right to it. *Id.*

In *Mid–America's Process Service v. Ellison,* 767 F.2d 684 (10th Cir.1985), the Tenth Circuit confronted a similar petition for mandamus by defendants in a civil action seeking to postpone discovery pending resolution of a grand jury proceeding in

another district on Fifth Amendment grounds. There the court held:

> Although postponement might be appropriate in a particular instance, we believe that the law does not require postponement of civil discovery until fear of criminal prosecution is gone. The propriety of postponement is a matter for the exercise of the trial court's discretion. In some instances district courts, in the exercise of that discretion, have allowed postponement of civil discovery until termination of related criminal proceedings. Yet other courts have deemed postponement inappropriate. The district court here denied the stay but entered a protective order. An appellate court does not issue the writ of mandamus to tell a district court how to decide a question that is within the district court's discretion. Even if upon direct appeal the appellate court might hold that the district court abused its discretion in denying postponement, the matter is not one in which the district court refused to perform a preemptory [sic] duty. Consequently, mandamus relief is not appropriate on this ground either.

*Id.* at 687 (citations omitted).

Like the situation in *Mid–America's Process Service,* I should not issue the writ of mandamus to tell the bankruptcy court how to decide a question that is within its discretion. There is no constitutional requirement that civil proceedings be stayed pending the outcome of parallel criminal proceedings, *Federal Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 902 (9th Cir.1989); *SEC v. Dresser Indus., Inc.,* 628 F.2d at 1375, and therefore no peremptory duty on the part of bankruptcy court to grant the continuance. In addition, while a gross abuse of discretion can constitute a judicial usurpation of power sufficient to support issuance of the writ, here the bankruptcy court made a reasoned decision to deny the continuance, based on a consideration of factors recognized as persuasive by other courts. *See, e.g., Roe v. Operation Rescue,* 123 F.R.D. 508, 509 (E.D.Pa.1988) (stay denied because it was uncertain how long parallel criminal proceedings would last); *Camp v. Rehtorik (In re Government Securities Corp.),* 81 B.R. 692, 693–

94 (Bankr.S.D.Fla.1987) (denying stay of adversary proceeding in part because of significant public interest in prompt disposition of SIPA liquidation). I cannot second-guess that decision. Since Mr. Blinder has not demonstrated a clear entitlement to the writ, his petition is denied.

## D. *Certification for Interlocutory Appeal.*

█ Mr. and Mrs. Blinder have moved for § 1292(b) certification of the issues raised in the petition for writ of mandamus and motion for stay. Under the governing statute, certification is appropriate when a district judge is "of the opinion that [its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Initially, I note that Mr. Blinder's request for § 1292(b) certification is procedurally inappropriate. In *In re Kaiser Steel Corp.,* the Tenth Circuit held that, since the district court's power to issue a writ of mandamus flows from its revisory appellate capacity over the bankruptcy court, § 1292(b) certification to the court of appeals is not available. 911 F.2d at 386. It is available, however, with respect to Mrs. Blinder's motion to withdraw the reference, a matter within the district court's original bankruptcy jurisdiction. *See id.* at 387. Nevertheless, I believe that the issues raised by Mrs. Blinder are clearcut and not subject to reasonable dispute, and that certification would certainly not advance the termination of this litigation. Therefore, I deny the request.

## E. *Attorney Fees.*

█ Lastly, the Trustee has requested an award of attorney fees because of the duplicative motions for withdrawal of the reference filed in this case. While the motions were redundant, they appear to have been based more on counsel's confusion as to the proper location for filing, and not to harass or oppress the Trustee, who had to do little to oppose them effectively. Accordingly, the request for attorney fees is denied.

IT IS ORDERED the Motion of Defendants Meyer Blinder, Lillian Blinder and Intercontinental Enterprises, Inc., to Withdraw the Reference of Adversary Proceeding [No. 91–1283 RJB] is DENIED, and

IT IS FURTHER ORDERED that Defendant Lillian Blinder's Motion to Withdraw the Reference of Adversary Proceeding [No. 91–1283 RJB] for Jury Trial is DENIED, and

IT IS FURTHER ORDERED that Defendant Lillian Blinder's Motion to Withdraw the Reference of Adversary Proceeding [No. 91–1429 SBB] for Jury Trial is DENIED, and

IT IS FURTHER ORDERED that the Redmey Management Company's Motion to Withdraw the Reference of Adversary Proceeding No. 91–1429 SBB is DENIED, and

IT IS FURTHER ORDERED that the Petition of Meyer Blinder for Writ of Mandamus and Motion of Lillian Blinder for Stay of Proceedings is DENIED, and

IT IS FURTHER ORDERED that the request of the Trustee for attorney fees is DENIED.